UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SEBASTIAN SCOTT,

     Petitioner,

v.                                                            Case No.  4:17cv437-WS-CJK

SECRETARY, DEPTMENT OF
CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This cause is before the court on petitioner's *pro se* habeas corpus petition filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer with relevant portions of the state court record.  (Doc. 21).  Petitioner replied.  (Doc. 23).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to habeas relief.

## BACKGROUND FACTS AND PROCEDURAL HISTORY[1]

On July 30, 2010, Nichole Collins awoke from a nap between 3:00 and 4:00 in the afternoon and walked toward her daughters' bedroom to check on them. As Collins glanced through the bedroom doorway, she saw petitioner Sebastian Scott sexually molesting one of her daughters, T.S. T.S. is developmentally disabled with an I.Q. of 49. T.S. was lying on her stomach on her bed watching TV, with her head at the foot of the bed, her chin propped in her hands and her legs spread apart with a blanket covering her from her mid-back to her knees. Scott was sitting on the edge of the bed behind T.S. leaning over her. Scott had his left hand underneath the blanket, palm up, between T.S.'s legs, and was fondling or penetrating T.S.'s vagina with his fingers. Scott was Collins' live-in boyfriend and the father of three of her children (T.S.'s half-siblings). T.S. considered Scott her stepfather. Ms. Collins screamed at Scott, grabbed his left hand and smelled it. Scott's hand was wet and smelled "of a woman having sex". (Doc. 21, App. C, pp. 119, 128).[2] When T.S. stood up, her shorts were unbuttoned, unzipped and hanging around her hips. Collins yelled and cursed at Scott and told him she was calling the police. Scott apologized,

---

[1] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the prosecution. (Doc. 21, App. C (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[2] References to exhibits are to those provided at Doc. 21. Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

prayed for forgiveness, took Collins' phone and left the home.  Collins, with children in tow, got in her car, drove to a gas station and called police.  Scott was later interviewed by police and admitted he touched T.S. underneath the blanket, but said he merely tickled the back of her thigh on top of her shorts.  DNA testing revealed T.S.'s DNA on Scott's left hand.  T.S. later disclosed that Scott also touched her buttocks and upper chest.

Scott was charged in Leon County Circuit Court Case No. 2010-CF-2464, with one count of sexual battery of a 12-year-old child by a person in familial or custodial authority (Count 1) and two counts of lewd or lascivious molestation (Count 2 (touching T.S.'s breasts) and Count 3 (touching T.S.'s buttocks)).  (App. A, pp. 17, 18).  Scott went to trial on September 9, 2011, and the jury found him guilty as charged of sexual battery (Count 1) and lewdly touching T.S.'s buttocks (Count 3).  (App. C, D (trial transcript); App. A, pp. 73-75 (written verdict)).  Scott was acquitted of the remaining molestation charge (Count 2).  (*Id*.).  The trial court sentenced Scott to 30 years' imprisonment for the sexual battery and a consecutive term of 10 years' imprisonment followed by 5 years on sex offender probation for the molestation.  (App. A, pp. 151-71 (sentencing hearing transcript), App. A, pp. 82-92 (judgment)).  The Florida First District Court of Appeal (First DCA) affirmed

on April 15, 2013, per curiam and without written opinion. *Scott v. State*, 110 So. 3d 445 (Fla. 1st DCA 2013) (Table) (copy at App. H).

On September 19, 2013, Scott filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (App. I, pp. 3-21). The state circuit court denied the motion on March 4, 2016, after an evidentiary hearing. (App. I, pp. 46-69 (evidentiary hearing transcript) and pp. 42-44 (order)). The First DCA affirmed per curiam without written opinion. *Scott v. State*, 226 So. 3d 821 (Fla. 1st DCA 2017) (Table) (copy at App. L). The mandate issued June 19, 2017. (*Id*.).

Scott filed his *pro se* federal habeas petition on September 22, 2017, raising six claims. (Doc. 1). Scott now concedes that three claims (Claims One, Two and Five) do not warrant federal habeas relief. (Doc. 23). Respondent asserts the petition should be denied in its entirety. (Doc. 21).

## SECTION 2254 STANDARD OF REVIEW

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's factual determinations are

presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]   Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this

Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004).  The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)).  The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

DISCUSSION

<u>Claims One, Two and Five</u>

Claims One and Two challenge the sufficiency of the evidence and T.S.'s competency to testify. Claim Five is a cumulative error claim based on trial counsel's alleged ineffectiveness. (Doc. 1). Scott's reply concedes that none of these claims warrant habeas relief. (Doc. 23). Claims One, Two and Five are deemed waived.

<u>Claim Three</u>      <u>"Violation of Petitioner[']s Constitutional Rights as Guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution through Ineffective Assistance of Counsel Where Counsel Failed to Present a Viable Defense at Trial."</u> <u>(Doc. 1, p. 10 in ECF).</u>

Scott faults trial counsel, Assistant Public Defender Deborah Whisnant, for her choice of trial strategy. Scott contends Whisnant chose a fabrication defense – that the allegations were fabricated and the victim's testimony unduly influenced by her mother – which was "doomed" to fail because it "was inconsistent with the record evidence" and Scott's admission to police that "his hand was indeed under the blanket and on the victim's thigh." (Doc. 1, p. 10 in ECF). Scott contends counsel should have instead pursued this strategy:

Instead, counsel should have been more diligent by preparing and presenting a defense to the actual charges of Sexual Battery by digital penetration, and Lewd and Lascivious Molestation. At least one element of each of these charges are difficult to prove, and the State had not presented any direct evidence that showed digital penetration had occurred at all, for Count One; and there was no evidence put forth to prove petitioner's intent for Count Two.

Therefore, had counsel more artfully prepared an appropriate defense, the petitioner may have very well prevailed in the case at bar.

(Doc. 1, p. 11 in ECF).

The parties agree that Scott presented this claim to the state courts as Ground I of his Rule 3.850 motion; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 10 in ECF; Doc. 21, pp. 24-25). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

A.    Clearly Established Federal Law

The Supreme Court follows a two-part test for evaluating claims of ineffective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *See id.* at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To

overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is

"doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

B.     Section 2254 Review of State Court's Decision

The state circuit court held an evidentiary hearing on this claim and denied relief by written order. The order correctly identified *Strickland* as the controlling legal standard (App. I, p. 42), and rejected the claim for these reasons:

> The Defendant claims that defense counsel failed to prepare an adequate defense regarding the charge of Sexual Battery by a Person in Familial or Custodial Authority (Count I). Count I of the information charged the defendant with engaging in sexual activity with a child over 12 years of age but less than 18 years of age by penetrating or having union with the vagina of the victim using his fingers. At the hearing, the Defendant claimed that counsel was ineffective in not consulting an expert, a doctor, or having the victim examined by a medical doctor to contradict the issue of digital penetration. It is significant to note that the jury returned a guilty verdict, but was not asked an interrogatory as to whether the jury found digital penetration of the vagina or simple union of the digits with the vagina. In addition, the Defendant admitted that he had his hand under the cover, but stated that he was only rubbing the victim's thigh.

> The State called defense counsel as a witness. Although she could not remember all of the depositions she took, she did remember taking the victim's deposition, the mother's deposition and she also reviewed the CPT interview of the victim. Based on her experience, she developed a defense theory of fabrication. This theory was based

on the mother's reaction to discovering the assault in progress coupled with the victim's developmental disability. The mother testified that she happened upon the Defendant and the victim in a bed in the home. She saw the Defendant behind the victim with her legs spread and his hand under the covers. She became irrate [sic]. She further testified that his hand was wet and smelled like sex. (Transcript pages 116-120).

Defense counsel testified that in her thirty plus years as a criminal defense attorney, that she has never seen a court order an independent medical evaluation of a sexual assault victim. She further testified that in her experience, digital penetration does not leave evidence of a sexual assault upon the victim because of the elasticity of the vagina.

The Defendant's conclusory allegations coupled with the charge of "penetration or union," does not establish that defense counsel's strategy and failure to retain an expert constitutes ineffective assistance of counsel. Even it if did, the Defendant failed to prove prejudice. Ground I is DENIED.

(App. I, pp. 42-43). The First DCA affirmed without explanation. (App. L).

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal habeas courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

Scott takes issue with the state court's interpretation of his claim, namely, its finding that his proposed defense consisted of expert testimony that the victim's vagina showed no sign of penetration. (Doc. 23, pp. 7-8). Scott contends that, instead, his proposed defense was "to present evidence of a lesser include[ed] offense." (*Id*., p. 7). Scott does not identify what "evidence of a lesser included offense" existed other than his statement to police, which the jury already heard.

The record confirms that the state court's interpretation of Scott's claim was correct. Scott's Rule 3.850 motion faulted counsel for failing to prepare a "viable" defense but did not explicitly identify that defense. Scott asserted: "[C]ounsel failed to take the steps necessary to present evidence of a lesser offense. See Ground II." (App. I, p. 8). Scott's Ground II faulted counsel for failing to retain an expert witness "regarding . . . the essential element of digital penetration". (*Id*., pp. 9, 16-18).

The postconviction trial court inquired of Scott at the beginning of the evidentiary hearing what defense he thought counsel should have prepared. (App. I, p. 48). Scott responded that "from the charges I was being charged with, it should have led her to consult with some doctors or someone, you know what I mean, to make our case more stronger [sic], but she didn't. . . . I was being charged with sexual battery by penetration, but there wasn't no examination. She didn't consult

with any doctors, or she didn't bring no kind of witnesses for the defense." (*Id.*, pp.

48-49).  The court clarified:

> THE COURT:  Okay.  So you believe that – and you can tell me yes or no, I'm not suggesting the answer, I'm just trying to understand your position, okay.  Is it your position that had she [defense counsel] gotten expert witnesses to testify, that would have helped you prove that there was not actual penetration?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  And what kind of experts, doctors?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Okay.  And how would doctors, do you think, help you prove that there wasn't' actual penetration?
>
> . . . .
>
> THE DEFENDANT:  By examining her and running tests on her and seeing if she has actually been, you know –
>
> THE COURT:  Okay.  So you think that if the doctor would have examined her –
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  – that would have proven that she could not have been or never was penetrated?
>
> THE DEFENDANT:  Yes, ma'am.

(*Id.*, p. 50).

This court defers to the state court's interpretation of Scott's claim as well as its other factual determinations, including credibility assessments, as Scott has not rebutted their correctness with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" (*quoting Marshall v. Lonberger*, 459 U.S. 422, 434 (1983))). Based on the state court's findings and the record below, fairminded jurists can concur in the conclusion that counsel's defense strategy was reasonable; that counsel's failure to pursue a strategy involving expert testimony on the issue of penetration was not unreasonable, and that Scott failed to show a substantial likelihood the jury's verdict would have been different had counsel presented expert testimony on the issue of penetration. Scott is not entitled to habeas relief on Claim Three.

Claim Four    "Violation of Petitioner['']s Constitutional Rights as Guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution through Ineffective Assistance of Counsel Where Counsel Failed to Present Exculpatory Expert Witness Testimony." (Doc. 1, p. 12 in ECF).

Scott faults trial counsel for failing to consult a "behavioral specialist" to rebut the State's characterization of the victim as developmentally disabled, and to assist counsel in challenging the victim's competency to testify. (Doc. 1, pp. 12-13). The parties agree that Scott presented this claim to the state courts as Ground II of his Rule 3.850 motion; that the state circuit court denied relief on the merits; and that the First DCA summarily affirmed without explanation. (Doc. 1, p. 12 in ECF; Doc. 21, p. 29). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

A.    Clearly Established Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is the *Strickland* standard outlined above.

B.    Section 2254 Review of State Court's Decision

The state circuit court held an evidentiary hearing on this claim and denied relief by written order. The order correctly identified *Strickland* as the controlling legal standard (App. I, p. 42), and rejected the claim for these reasons:

> The Defendant claims defense counsel was ineffective by failing to present an expert to testify as to the victim's competency to testify. The Defendant also argued defense counsel failed to challenge the victim's competency to testify.
>
> It is undisputed that the victim in this case, T.S., was developmentally disabled with an intellectual functioning ability of between seven and nine years of age. The defense counsel, Ms.

Whisnant, did challenge [the] competency of the child victim. The Court overruled the objection. (Transcript pages 50-52.) As to the Defendant's second challenge, that of defense counsel's failing to retain and call an expert to testify that the victim, T.S., a developmentally disabled child, was not competent to testify is wholly without merit. It is inadmissible and inappropriate to call a witness to testify that another witness is not competent to testify. Moreover, the Court conducted an appropriate inquiry and determined, over objection, that the victim was competent. Defense counsel was not ineffective. The Defendant failed to prove prejudice. Ground II is DENIED.

(App. I, p. 43). The First DCA affirmed without explanation. (App. L).

Applying *Wilson*'s look-through presumption, the state court's rejection of Scott's claim was based on a reasonable determination of the facts and a reasonable application of *Strickland*'s two-pronged standard. The trial transcript establishes that defense counsel aggressively challenged T.S.'s competency to testify, arguing that the State asked leading questions that elicited one-word responses from T.S., and that neither the court's nor the State's questioning established that T.S. had a moral sense of the obligation to tell the truth, was capable of recollecting critical facts about the incident and was able to recount or narrate the facts to the jury. (App. C, pp. 42-52 (voir dire and argument on T.S.'s competency), pp. 216-21 (further argument on T.S.'s competency)). Scott argues that an expert would have helped counsel "demonstrate[e] the victim's inability to observe and recollect facts, as well as her inability to narrate said facts to the court and/or jury", (doc. 23, p. 11), but that is precisely what counsel did. Scott has not shown that counsel's handling of

the competency issue was objectively unreasonable, nor has he demonstrated a substantial likelihood that the result of the trial court's competency determination, and ultimately the jury's verdict, would have been different had counsel retained a behavioral specialist. Scott's additional theory that a behavioral specialist would have helped him defend the charges by showing T.S. was <u>not</u> developmentally delayed is even more dubious.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Scott is not entitled to habeas relief on Claim Four.

| | |
|---|---|
| <u>Claim Six</u> | <u>"Violation of Petitioner[']s Constitutional Rights as Guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution by the Postconviction Court[']s] Denial of Petitioner's Requests to Provide him with Counsel to Assist with the Postconviction Process." (Doc. 1, p. 15 in ECF).</u> |

Scott's final claim challenges the state court's denial of his motion to appoint postconviction counsel. (Doc. 1, pp. 15-16 in ECF). The parties agree that Scott presented this claim to the state courts in his Rule 3.850 proceeding and that the courts denied relief. (Doc. 1, p. 15; Doc. 21, p. 33). Respondent contends the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law. (Doc. 21, pp. 34-36).

Scott's claim fails because there is no constitutional right to postconviction counsel. *See Coleman v. Thompson*, 501 U.S. 722, 756-57 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (reaffirming that prisoners have no independent constitutional right to postconviction counsel, but recognizing that "[i]nadequate assistance of counsel at initial-review collateral proceedings *may establish cause for a prisoner's procedural default* of a claim of ineffective assistance at trial." (emphasis added)); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Because meaningful and equal access to the state court system is adequately provided through the direct appeal process, there is generally no constitutional right to effective assistance of counsel in state collateral proceedings."); *Murray v. Giarratano*, 492 U.S. 1, 10 (1989) (holding that the due process clause does not require states to appoint counsel for capital defendants seeking postconviction relief); *Barbour v. Haley*, 471 F.3d 1222 (11th Cir. 2006) (holding that death-sentenced inmates have no federal constitutional right to postconviction counsel). Scott's challenge to the denial of postconviction counsel provides no basis for federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the Leon County Circuit Court's judgment in *State of Florida v. Sebastian Scott*, Case No. 2010-CF-2464, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 20th day of December, 2018.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.